```
_____ FILED              _____ RECEIVED
_____ ENTERED            _____ SERVED ON
            COUNSEL/PARTIES OF RECORD

              MAR 2 1 2012

          CLERK US DISTRICT COURT
            DISTRICT OF NEVADA
BY: _____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BONNIE DUKE, | 3:09-cv-00739-RAM |
| Plaintiff, | **ORDER** |
| vs. | |
| CITY OF FERNLEY, KELLY MALLOY, TODD CUTLER, DONALD PARSONS, SR., MONTE MARTIN, CURT CHAFFIN, and CAL EILRICH, | |
| Defendants. | |

This matter involves an employment discrimination action brought by Plaintiff Bonnie Duke against her former employers. Before the court are Ms. Duke's motion for summary judgment (Doc. #66[1]) and Defendants City of Fernley's, Kelly Malloy's, Todd Cutler's, Donald Parsons', Monte Martin's, Curt Chaffin's, and Cal Eilrich's cross-motion for summary judgment (Doc. #67). For the reasons stated below, Ms. Duke's motion is denied and the City's motion is granted.

## I. BACKGROUND

Bonnie Duke ("Ms. Duke") is a certified public accountant. (Amend. Compl. (#49) at 2:6-12.) She has worked as a private and governmental accountant, a consultant, a finance director, and a county manager in various cities throughout Alaska and Northern Nevada. (*Id.* at 2:6-10.)

/// /// ///

/// /// ///

---

[1] Refers to court's docket number.

**A.      Ms. Duke Becomes Fernley's Finance Director and City Treasurer**

From November 5, 2001, through March 4, 2009, Ms. Duke served as defendant City of Fernley's ("the City") Finance Director and City Treasurer.  (*Id.* at 2:5-6.)  Unlike other cities in Nevada, in Fernley the offices of Finance Director and City Treasurer are combined. (Doc. #67 at Ex. 10-11.)  However, despite the fact that the position has two titles, on March 21, 2007, the City Council specified that the joint office is, in fact, "a single position."  (*Id.* at Ex. 11.)

The office of Finance Director and City Treasurer is a nonelected position and was created on June 6, 2001, by city ordinance 2001-0005 ("2001-0005").  In pertinent part, 2001-0005 states that the City Treasurer and Finance Director "shall hold the office during the pleasure of the Mayor and [City] Council." (Doc. #67 at Ex. 10.)  City ordinance 2001-0001 ("2001-0001"), which passed around the same time as 2001-0005 and created the office of City Manager, adds that the City Manager is "authori[zed]" to "remove all non-elected officers and employees of the City except as otherwise provided by law."  (*Id.* at Ex. 17.)

**B.      Ms. Duke's Office Executes its Duties, Issues Mr. Parsons' Water Bill, & Denies Parker Malloy's Request for Payment**

The Finance Director and City Treasurer's duties include, among other things, billing and spending.  (Pl.'s Opp'n. Summ. J. (#69) at 24-7.)  As a result, during Ms. Duke's tenure, the Treasurer's office issued water bills to Fernley residents, including defendant Donald Parsons ("Mr. Parsons"). (Doc. #67 at 18:9; Ex. 12.)  Mr. Parsons' bill, however, was disputed. A waterline had burst, Mr. Parsons' house had flooded, his water meter had allegedly malfunctioned, and six months later the City issued a "very large water bill."  (*Id.* at 18:9-12, 19; Doc. #69 at 25:9-23.) Attempting to negotiate the amount due, Mr. Parsons contacted Ms. Duke's staff.  However, Mr. Parsons never spoke to Ms. Duke, requested to speak with her, or had any contact with her regarding his water bill. (Doc. #67 at Ex 1.)

In addition to billing, the Finance Director and City Treasurer is also responsible for authorizing expenditures.  (Doc. #69 at 25.)  As a result, when Fernley resident Parker Malloy requested compensation for videotaping a City event, Ms. Duke investigated the claim before disbursing funds.  (*Id.* at 26.)  She discovered that Leslieann Hayden, a City employee with no

2

spending or contracting authority, verbally agreed to pay Parker Malloy for his services. (*Id.*) Ms. Duke, then, denied Parker Malloy's claim and informed Ms. Hayden that she was not authorized to contract for personal services on behalf of the City. (*Id.*)

Ms. Hayden, however, decided to pay Parker Malloy with her own personal funds. (*Id.*) But, Parker Malloy's mother, defendant Kelly Malloy ("Ms. Malloy"), refused to cash the check and requested consideration of the matter at the City Council's upcoming meeting. (*Id.*) Her request was denied. (*Id.*) Ms. Duke and Ms. Malloy never spoke about the matter or had any contact regarding Parker Malloy's services. (Doc. #67 at 26:1-2.)

### C.    Questions Concerning Fernley's Administration and Financial Stability Arise

In late 2008 and early 2009, both Ms. Malloy and Mr. Parsons became vocal critics of the City's administration. (*Id.* at 7:5-8.) They took aim at the City Manager, Gary Bacock, and the Finance Director and Treasurer, Ms. Duke. (*Id.*) In January 2009, Ms. Malloy and Mr. Parsons ran for City Council and were elected. (*Id.* at 7:12-14.) Ms. Malloy's displeasure with Ms. Duke's performance as the Finance Director and Treasurer was a predominate feature of her campaign for office. (*Id.*) Once elected, she and Mr. Parsons continued to "criticize" and "investigate" Mr. Bacock and Ms. Duke. (*Id.* at 7:16.)

On January 7, 2009, Fernley's Mayor, defendant Todd Cutler ("Mr. Cutler") gave his state of the City address, in which he stated that "[t]he City's finances are strong." (*Id.* at Ex. 3.) On January 14, 2009, Mr. Bacock was replaced by a new City Manager, Greg Evangelatos ("Mr. Evangelatos"), who discovered that the City's finances were far from strong. (*Id.* at 7:19-21.) Rather, the City was approximately $450,000 in debt. (*Id.*)

The City took action. In late January, Mr. Cutler, Mr. Evangelatos, Ms. Duke, and the City Council—which now included defendants Ms. Malloy, Mr. Parsons, Monte Martin, Curt Chaffin, and Cal Eilrich—conducted an audit and a series of strategic planning and budget meetings. (*Id.* at 7:24-8.) On February 18, 2009, Ms. Malloy added Ms. Duke's possible termination to the agenda of the Council's upcoming March 4, 2009, meeting. (*Id.* at 8:1-4.) Then, Ms. Malloy met with Mr. Cutler, Mr. Evangelatos, Tom Gransbery, Nevada Department of Taxation's Supervisor of Local Government Finance, and Laurel Jackson, CPA for Kafoury Armstrong, to discuss Ms. Duke's termination. (*Id.*)

1   On February 20, 2009, the City formally notified Ms. Duke of the agenda item and, pursuant to

2   N.R.S. § 241.033, advised her that she was entitled (1) to be present at the meeting, (2) to have an

3   attorney present, and (3) to present written evidence relating to her performance as Finance Director

4   and City Treasurer. (*Id.* at 8:19-26; Ex. 7.) Finally, on February 22, 2009, Ms. Duke allegedly

5   received an unsigned "hit list," reiterating Ms. Malloy and Mr. Parsons' intention to terminate her.

6   (Compl. (#1) at 3:12-14.)

7   **D.**      ***The Events of March 4, 2009: Ms. Malloy Meets with Mr. Gransbery & the Fernley City***

8            ***Council Convenes***

9            On March 4, 2009, the day set to discuss Ms. Duke's termination, Mr. Parsons was stopped by

10   Lillian Perreria, a clerk in the Finance Department. (Doc. #67 at 18:27-8.) She asked Mr. Parsons

11   about his water bill, he expressed his concerns, and stated that he would not pay it until he spoke with

12   Letha Gordon, another employee in the Finance Department. (*Id.* at 19:1-6.) Mr. Parsons did not

13   speak with Ms. Duke or request to see her. (*Id.*)

14            Meanwhile, Ms. Malloy met with Mr. Gransbery to discuss the City's finances and a 2008 audit

15   report. (*Id.*) Although Ms. Duke was not present at the meeting, Ms. Duke alleges that Ms. Malloy

16   accused Ms. Duke of embezzlement, failing to augment the City's budget, and unlawfully borrowing

17   City funds. (Doc. #69 at 29:3-11.)

18            Later that day, the City Council convened. (*Id.*) Members of the public and local news

19   agencies gathered to watch. (*Id.*) Ms. Duke appeared with her attorney and agenda Item 8, concerning

20   Ms. Duke's termination, soon arose. Ms. Malloy moved to terminate Ms. Duke and Mr. Parsons

21   seconded the motion for discussion. (Doc. #67 Ex. 8 at 3:24.)

22            Mr. Chaffin spoke first and recommended conducting an audit before terminating Ms. Duke.

23   (*Id.*, Ex. 8 at 4:6-13.)

24            Mr. Eilrich spoke second. He announced, simply and cryptically, that he had made a decision

25   and that it wasn't easy. (*Id.*, Ex. 8 at 4:15-8.)

26            Mr. Parsons spoke third. He stated that he agreed with Mr. Chaffin and then discussed

27   Fernley's financial situation, including its $450,000 debt, a dearth of transparent financial records, and

28   that the City recently "had to lay off a bunch of people." (*Id.*, Ex. 8 at 4-5.) Mr. Parsons concluded

1   by emphasizing that the City should be run like a business and that "accountability goes all the way

2   to the top, all the way to the bottom . . . ." (*Id.*, Ex. 8 at 7:10.)

3       Ms. Malloy spoke fourth. She commented on the situation's gravity, discussed her accounting

4   and auditing experience, and then listed her "concerns" with the City's finances. (*Id.*, Ex. 8 at 7:7-10.)

5   These included: (1) "multiple habitual violations of N.R.S. § 354.626," which governs City spending;

6   (2) the City's debt and its ability to repay it; (3) the City's "fail[ure] to control its assets such that large

7   defalcations have occurred;" (4) the City Manager's repeated failure to consult with the City Council

8   before amending the budget; and (5) the City's accounting failures, including its inability to distinguish

9   between "capitol and non-capitol assets[, which] is accounting 101." (*Id.*)

10      Mr. Martin spoke last, succinctly stating his belief "that our duty is to see problems and correct

11  problems, not nail people." (*Id.*, Ex 8 at 12:13-4.)

12      Following this discussion, both Mr. Cutler and Mr. Eilrich invited Ms. Duke to respond. (*Id.*,

13  Ex 8 at 13:7-12.) She declined. (*Id.*) Mr. Parsons, then, invited Ms. Malloy to revise her motion and

14  place Ms. Duke on administrative leave pending a forensic audit. (*Id.*, Ex 8 at 13:12-9.) She declined.

15  (*Id.*) Mr. Culter, then, put the motion to a vote. (*Id.*) Ms. Malloy, Mr. Parsons, and Mr. Eilrich cast

16  "aye's" and Mr. Chaffin and Mr. Martin cast "nay's." (*Id.*, Ex 8 at 14.)  The motion passed 3-2 with

17  no abstentions. (*Id.*)  Ms. Duke was terminated. (*Id.*)

18      Following Ms. Duke's termination, local news media published reports of the event and

19  Ms. Duke was unable to immediately find employment, despite the fact that she applied for two

20  positions as a budget analyst with the State of Nevada. (Doc. #69 at 29:12-27.)

21  **E.    *Ms. Duke Files Suit Against the City***

22      On December 15, 2009, Ms. Duke filed suit in United States District Court for the District of

23  Nevada against the City, Mayor Cutler, and Ms. Malloy, Mr. Parsons, Mr. Martin, Mr. Chaffin, and

24  Mr. Eilrich. (Doc. #1.) According to Ms. Duke her termination by the City was unlawful because the

25  City Council conducted a negligent performance evaluation, Mr. Parsons violated her right to free

26  speech, Ms. Malloy violated her right to free speech, the City Council defamed her, and the City

27  violated 2001-0005 and 2001-0001. (Doc #49.)

28  /// /// ///

On August 18, 2011, Ms. Duke and the City filed cross-motions for summary judgment. (Doc. #66; Doc. #67.) On February 28, 2012, the court held a hearing on the matter. (Doc. #77.) During the hearing, Ms. Duke introduced one new legal theory and one new argument in an attempt to survive summary judgment. With regard to the new legal theory, Ms. Duke argued that the City allegedly violated Ms. Duke's liberty interest by failing to provide her with a meaningful opportunity to respond to the City's accusations. (*Id.*) In addition, Ms. Duke introduced a new defamation argument and asserted that Ms. Malloy defamed Ms. Duke during Ms. Malloy's March 4, 2009, meeting with Mr. Gransbery. (*Id.*)

## II. LEGAL STANDARD

Summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the record in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the movant initially shows that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings but must respond with evidence setting "out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party has the "burden of advertising [sic] to 'specific facts showing that there is a genuine issue for trial . . . .' [I]t is not the district court's job to sift through the record to find admissible evidence in support of a non-moving party's case." *Claar v. Burlington N. R.R.*, 29 F.3d 499, 504 (9th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Ms. Duke's second amended complaint (Doc. #49) alleges that her termination by the City was unlawful because (1) the City Council conducted a negligent performance evaluation, (2) Mr. Parsons violated her right to free speech, (3) Ms. Malloy violated her right to free speech, (4) the City Council defamed her, (5) the City violated 2001-0005, and (6) the City violated 2001-0001. (*Id.*) In addition, Ms. Duke's opposition to the City's motion for summary judgment asserts that her termination was

1  discriminatory, that the City deprived her of due process, and that Ms. Malloy defamed Ms. Duke

2  during a March 4, 2009, meeting with Mr. Gransbery. (Doc. #69 at 4.)

3  Whereas Ms. Duke seeks summary judgment on claims five and six, the City seeks summary

4  judgment against all of Ms. Duke's claims. For the reasons discussed below, Ms. Duke's motion is

5  denied and the City's motion is granted.

6  **A.   *Ms. Duke's Poorly Pled Due Process & Employment Discrimination Claims***

7  As a preliminary matter, the court addresses Ms. Duke's muddled filings. On the one hand,

8  Ms. Duke's arguments often read like an employment discrimination claim. (*See, e.g.,* Doc. #69 at

9  8-10 alleging that her termination was pretextual and illegitimate). However, Ms. Duke neither pled

10  that she is a member of a protected class nor that she was actually discriminated against. On the other

11  hand, Ms. Duke argues that the City violated her right to due process. (*Id.* at 8.) However, Ms. Duke's

12  second amended complaint does not assert a due process cause of action. (*See* Doc. #49.) In fact,

13  Ms. Duke's first mention of a "[p]ossible . . . [d]ue [p]rocess [v]iolation" appears in her opposition

14  to the City's motion for summary judgment. (Doc. #69 at 1:26-7, 4:15.)

15  These claims are barred. The Ninth Circuit has held that it is inappropriate to introduce new

16  arguments and legal theories at the summary judgment stage. *Colman v. Quaker Oats Co.,* 232 F.3d

17  1271, 1294 (9th Cir. 2000). After a pretrial scheduling order has been entered, a party seeking to

18  introduce new arguments or theories must amend their pleadings. Amendment requires "show[ing]

19  'good cause' for amendment under Rule 16(b), then, . . . that amendment [would be] proper

20  under Rule 15." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607-09 (9th Cir. 1992).

21  On November 10, 2010, the court entered a scheduling order providing that the "date by which

22  the parties shall file motions to amend pleadings or to add parties is December 23, 2010." (Sched.

23  Order (#43) at 2:1-2.) On September 12, 2011, Ms. Duke filed her opposition to the City's motion for

24  summary judgment, which first pled claims that can be charitably construed as employment

25  discrimination and due process causes of action.

26  These poorly pled claims are barred because Ms. Duke has neither shown good cause to amend

27  under Rule 16 nor that amendment would be proper under Rule 15. However, because Ms. Duke

28

1  argued her due process claim at length during the February 28, 2012, hearing, the court notes that even

2  if it were properly pled this claim would have failed as a matter of law.

3      Ms. Duke contends that the City's termination of her employment deprived her of a liberty

4  interest because the City harmed her reputation and impaired her employment prospects. (Doc. #66

5  at 8.) It is well settled that an individual has no cognizable liberty interest in her reputation;

6  consequently, when a state actor, like the City, makes allegations that merely damage a person's

7  reputation, like Ms. Duke's, no federally protected liberty interest has been implicated. *See Paul v.*

8  *Davis*, 424 U.S. 693, 711-12 (1976). Indeed, defamation by the government does not deprive a person

9  of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's

10 future employment. *Id.* Rather, it is only the "alteration of legal status," such as governmental

11 deprivation of a right previously held, "which, combined with the injury resulting from the defamation,

12 justif[ies] the invocation of procedural safeguards." *Id.*, at 708-09.

13      Ms. Duke, however, has not alleged any alteration of legal status. Even if she had, however,

14 the court further notes that the City provided the process due because the City fully complied with

15 N.R.S. § 241.033. *See supra* p. 4.

16 **B.   Count One: Ms. Duke's Negligent Performance Evaluation Claim is not Legally Cognizable**

17      The court now addresses Ms. Duke's first claim, alleging that her termination was unlawful

18 because the City either failed to "dismiss [her] without evaluation . . . through [an] appraisal process"

19 or that the City performed a negligent evaluation. (Doc. #49 at 4:18; *see also* Doc. #69 at 8 discussing

20 this claim).

21      These claims are not legally cognizable. Ms. Duke has not cited any case or statute indicating

22 that such a cause of action exists in Nevada. Moreover, the court's survey of both Nevada and Ninth

23 Circuit law has not revealed a single case in which such a claim is recognized. Finally, at least three

24 nearby jurisdictions have rejected negligent performance evaluation causes of action. *See, e.g., Walt v.*

25 *State*, 751 P.2d 1345 (1988); *Tollefson v. Roman Catholic Bishop*, 219 Cal. App. 3d 843 (1990);

26 *Chellsen v. Pena*, 857 P.2d 472 (Colo. App. 1992). As a result, Ms. Duke's first cause of action fails

27 because it is not legally cognizable.

28 /// /// ///

8

1    However, the court notes that had Ms. Duke pled a wrongful termination cause of action, which

2  she did not, it would still fail as a matter of law because Ms. Duke has conceded that she was an at-will

3  employee. (Doc. #69 at 35:24-25); *see also* Fernley City Ordinance 2001-0005 (stating that the City

4  Treasurer and Finance Director "shall hold the office during the pleasure of the Mayor and [City]

5  Council"); *Wayment v. Holmes*, 912 P.2d 816, 818 (Nev. 1996) ("It is undisputed that [the Plaintiff]

6  was an at-will employee who could properly be discharged without cause at the will of the employer").

7  The Nevada Supreme Court only permits wrongful termination causes of action for at-will employees

8  in "those rare and exceptional cases where the employer's conduct violates strong and compelling

9  public policy." *Id.* Ms. Duke has not asserted that such an exception exists here and the court cannot

10  discern any.

11  **C.    Counts Two & Three: Ms. Duke's First Amendment Retaliation Claims Fail as a Matter of**

12  **Law**

13    Ms. Duke's second and third causes of action allege First Amendment retaliation. (Doc. #49

14  at 6.) Again, however, Ms. Duke's filings require preliminary interpretation.

15    ***i.    Construing Ms. Duke's claims and filings***

16    On the one hand, Ms. Duke's second amended complaint does not predicate either of these

17  claims on the First Amendment. (*See id.* at 6-7 predicating these claims on "retaliation" and

18  "defam[ation]"). On the other hand, Ms. Duke's complaint does predicate the court's jurisdiction on

19  the First and Fourteenth Amendments. (*Id.* at 2:2.) Further, the City has construed both claims as

20  alleging First Amendment retaliation; and, Ms. Duke's opposition to the City's motion for summary

21  judgment does not appear to reject this interpretation. (Doc. #69 at 24-30.) Rather, at various points

22  in her brief, Ms. Duke characterizes these two claims as alleging defamation, deprivation of due

23  process, retaliation, or all three. (*See id.*)

24    Consequently, because the court addressed Ms. Duke's due process claim above and will

25  address her defamation claims below, it construes counts two and three as alleging First Amendment

26  retaliation and will address those claims now.

27  /// /// ///

28  /// /// ///

9

### ii.   The Gravamen of Ms. Duke's First Amendment Retaliation Claims

Ms. Duke's First Amendment retaliation claims arise from two different sets of facts. With regard to the first claim, Ms. Duke alleges that Ms. Malloy voted to terminate Ms. Duke—and thereby retaliated against Ms. Duke in violation of her First Amendment rights—because Ms. Duke refused to pay Parker Malloy for videotaping a City event. (Doc. #49 at 6.) With regard to the second claim, Ms. Duke alleges that Mr. Parsons voted to terminate Ms. Duke—and thereby retaliated against her in violation of her First Amendment rights—because Ms. Duke refused to "write off" Mr. Parsons' water bill. (*Id.*) In response, the City argues that neither Ms. Malloy nor Mr. Parsons retaliated against Ms. Duke and, even if they did, Ms. Duke's claims fail as a matter of law. The court agrees.

When evaluating a First Amendment retaliation claim by a public employee, the court must address a "sequential five-step series of questions:" (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). Only if the plaintiff passes the first three tests does the burden shift to the City to address the last two tests. *Id.* at 1071-72. Here, Ms. Duke has not met her burden of satisfying the first three tests.

### iii.   Ms. Duke did not "speak" on a matter of public concern

Regarding the first test, Ms. Duke has not established that she spoke on a matter of public concern. "Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community." *Johnson v. Multnomah County, Or.*, 48 F.3d 420, 422 (9th Cir. 1995). But, "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies" is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)).

Although Ms. Duke is a public official whose speech would normally constitute a public concern, the disputes involving Mr. Parsons' water bill and Parker Malloy's services are best

10

characterized as personnel disputes or individual grievances. Both concern internal management and decision-making. Further, both disputes concern private, individual interests that are of no interest to the community at large. Finally, both disputes involve one employee's claim against another. In either case, no public interest is at stake. As a result, the court cannot conclude that Ms. Duke's speech addressed a matter of public concern.

### iv.    Ms. Duke spoke as a public employee

Regarding the second test, it is undeniable that Ms. Duke spoke as a public employee and not as a private citizen. "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Eng*, 552 F.3d at 1071.

As the Finance Director and Treasurer, Ms. Duty's responsibilities included issuing bills and authorizing expenditures. (Doc. #69 at 24-25.) It is undeniable that both Mr. Parsons water bill and Patrick Malloy's request for payment fall under Ms. Duke's duties as a public employee. *See supra* pp. 2-3. Therefore, Ms. Duke did not speak as a private citizen.

### v.    Ms. Duke's speech did not motivate her termination

Regarding the third test, there is not a scintilla of evidence to suggest that Ms. Duke's speech was a substantial or motivating factor in her termination. On the one hand, there is no evidence that either Ms. Malloy or Mr. Parsons ever contacted, spoke, or communicated with Ms. Duke about Parker Malloy's services or Mr. Parsons' water bill. (*See id.*) On the other hand, the record is replete with information relating to the City's dearth of financial records and its concern about its excessive debt. (Doc. #67 at 3-8.)

Attempting to conjure the specter of some unlawful motivation, Ms. Duke promises to demonstrate that the City's proffered reasons for Ms. Duke's termination were either false or overstated. (Doc. #69 at 26:8.) This argument is meritless. First, a promise to make an argument or demonstration is insufficient to survive summary judgment. *See Claar*, 29 F.3d at 504 (quoting *Celotex Corp.*, at 477 U.S. 324 ("The non-moving party has the 'burden of advertising [sic] to 'specific facts showing that there is a genuine issue for trial . . . .' [I]t is not the district court's job to sift through the record to find admissible evidence in support of a non-moving party's case").

11

Second, the veracity of the City's statements is largely irrelevant. The issue is whether Ms. Duke's speech regarding Parker Malloy's services and Mr. Parsons' water bill, motivated Ms. Duke's termination. The issue is not, as Ms. Duke argues, whether the City's stated reasons are false. *See Eng*, 552 F.3d at 1070. Moreover, had Ms. Duke demonstrated that the City's stated reasons are both false and were known to be false by the City Council at the time of her termination, which she did not, then Ms. Duke would have only adduced circumstantial evidence that her speech could have motivated her termination. However, *Eng v. Cooley* requires that the plaintiff demonstrate that her speech was a substantial or motivating factor in the adverse employment action. 552 F.3d at 1070. Ms. Duke has not made such a showing.

    *vi.*     **Conclusion: Ms. Duke's First Amendment retaliation claims fail as a matter of law**

In conclusion, Ms. Duke has not satisfied her burden because she has not demonstrated that she spoke on a matter of public concern, spoke as a private citizen, or that her speech motivated her termination. Even if she had, however, the court notes that the City has likely satisfied its burden with regard to *Eng v. Cooley*'s final two tests.

With regard to the fourth test, the City's legitimate administrative interests in maintaining transparent financial records and accountable employees likely "outweigh[s] [Ms. Duke's] First Amendment rights." *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004). Whereas the cost of opaque financial records appears to have cost the City $450,000, disregarding Ms. Duke's First Amendment rights, which were not, in fact, disregarded, cost Ms. Duke one year's salary. (Doc. #67 at 8.)

With regard to the fifth test, it is highly likely that the City "would have reached the same [adverse employment] decision in the absence of the [Ms. Duke's] protected conduct." *Thomas*, 379 F.3d at 808 (quoting *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 976-77 (9th Cir. 2002)). Under this test, the Supreme Court has stated that the government may avoid liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Here, even if Ms. Malloy and Mr. Parsons held a grudge against Ms. Duke, the City has demonstrated that Ms. Duke's termination was—at least partially, if not entirely—the result of the

City's dire financial circumstances. (*See* Doc. #67, Ex. 8 at 8-14.) As a result, it is virtually impossible for Ms. Duke to demonstrate a but-for relationship between her speech and her termination.

Therefore, Ms. Duke's First Amendment retaliation claims fail as a matter of law.

**D.     *Count Four: Ms. Duke's Defamation Claims Fail as a Matter of Law***

Ms. Duke further alleges that the Mayor and City Council caused false and defamatory statements to be published in the local news media and to potential employers. (Doc. #49 at 7:15-19.) In Nevada, the general elements of a defamation claim require the plaintiff to prove: "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (2002).

Where, as here, the plaintiff is a public official, the United States Supreme Court has clarified that "actual malice," rather than mere negligence, must be demonstrated by clear and convincing evidence for the plaintiff to prevail. *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). Actual malice means "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Pegasus*, 57 P.3d at 719 (quoting *New York Times*, 376 U.S. at 280). Reckless disregard means that the publisher of the statement acted with a "'a high degree of awareness of . . . [the] probably falsity' of the statement or had serious doubts as to the publication's truth." *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

Once again, however, Ms. Duke's pleadings present a problem. Whereas her complaint (Doc. #49) asserts that the Mayor and City Council defamed her during the March 4, 2009, City Council meeting, at the February 28, 2012, hearing, Ms. Duke predicated her defamation claim on a different set of facts: the March 4, 2009, meeting between Mr. Gransbery and Ms. Malloy. (*See* Doc. #69; Doc. #77.) For the reasons stated below, both of Ms. Duke's defamation claims fail as a matter of law.

> **i.     *Ms. Duke's defamation claim relating to the March 4, 2009, City Council meeting fails as a matter of law***

Ms. Duke alleges that the Mayor and City Council defamed her during the March 4, 2009, City Council meeting where Ms. Duke was terminated. (Doc. #49.) Two major problems beset this claim.

First, Ms. Duke has failed to provide any evidence—let alone clear and convincing evidence—that the Councilmembers' statements were made with actual malice. Rather, relying on *Chowdry v. NLVH, Inc.*, 851 P.2d 459 (Nev. 1993), Ms. Duke asserts that the malice component is abrogated when the allegedly false and defamatory statement "tends to injure the Plaintiff in her business or profession," even if the plaintiff is a public official.  (Doc. #69 at 28:14-24.)

This is not true. *New York Times v. Sullivan* and its progeny indubitable stand for the proposition that actual malice must be demonstrated in defamation actions involving public officials even if the alleged defamatory statement addresses the plaintiff's professional reputation. *See, e.g.*, *New York Times*, 376 U.S. at 279-80 (stating that actual malice must be proven even though the New York Times published defamatory statements that injured Commissioner L.B. Sullivan's professional reputation).  Furthermore, Ms. Duke's reliance on *Chowdry* for the proposition that the malice component is abrogated when a public official's professional reputation is injured misreads a critical fact in the case: *Chowdry* involved a surgeon, not a public official.  *See Chowdry*, 851 at 459 (describing plaintiff surgeon's defamation suit against defendant hospital).  In fact, there is no discussion of public officials in *Chowdry* whatsoever.  *Id.*

Second, Ms. Duke's defamation claim fails because every statement made during the March 4, 2009, City Council meeting is absolutely privilege by Nevada Law. N.R.S. § 241.0353(1) provides, "[a]ny statement which is made by a member of a public body during the course of a public meeting is absolutely privileged and does not impose liability for defamation or constitute a ground for recovery in any civil action." Nev. Rev. Stat. § 241.0353(1) (West 2010).  It is undeniable that the Councilmembers constitute a public body and that their statements, which Ms. Duke alleges to be defamatory, were made during a public meeting. *See supra* pp. 4-5.  Therefore, Ms. Duke's claim must fail as a matter of law. *See Chachas v. City of Ely, Nev.*, 615 F. Supp. 2d 1193, 1210 (Nev. 2009) (granting defendant city's motion for summary judgment against plaintiff's defamation claim because defendant's statement during a city council meeting that plaintiff was a "damn liar" was absolutely privileged by N.R.S. § 241.0353(1)).

In sum, Ms. Duke's first defamation claim fails as a matter of law because she has not provided any evidence that the Councilmembers statements were made with actual malice.  Even if she did,

14

however, her claim would fail because the allegedly defamatory statements are absolutely privileged under N.R.S. § 241.0353(1).

ii.   *Ms. Duke's alleged defamation claim relating to the March 4, 2009, meeting between Mr. Gransbery and Ms. Malloy fails as a matter of law*

Ms. Duke further alleges that Ms. Malloy defamed Ms. Duke during a March 4, 2009, meeting with Mr. Gransbery. As noted above, Ms. Duke's second amendment complaint does not plead a defamation claim arising out of Ms. Malloy's March 4, 2009, meeting with Mr. Gransbery. (*See* Doc. #49 at 7:15-19.) Nonetheless, in both her opposition to the City's motion for summary judgment (Doc. #69) and during the February 28, 2012, hearing (Doc. #77), Ms. Duke argued that her suit should survive summary judgment because the March 4, 2009, meeting between Ms. Malloy and Mr. Gransbery presents an issue of material fact as to whether Ms. Malloy defamed Ms. Duke. (*Id.*) This argument fails for several reasons.

a.   *This claim was not properly pled and is, therefore, barred*

First and foremost, it is inappropriate to introduce new arguments and legal theories at the summary judgment stage. *Colman*, 232 F.3d at 1294. As previously mentioned, parties seeking to introduce new arguments or theories must comply with Federal Rules of Civil Procedure 16(b) and 15. *See Johnson*, 975 F.2d at 607-09.

Ms. Duke, however, improperly relies on a new argument to avoid summary judgment. Unlike her second amended complaint, which makes no mention of Mr. Gransbery or Ms. Malloy's March 4, 2009, meeting with him, (*see generally* Doc. #49), Ms. Duke's opposition to the City's motion for summary judgment predicates her defamation claims on Ms. Malloy's March 4, 2009, meeting with Mr. Gransbery. (*See* Doc. #69 at 29 introducing her new defamation claim.) This alone is sufficient to grant the City's motion for summary judgment with regard to Ms. Duke's second defamation claim. *See Colman*, 232 F.3d at 1294.

Nonetheless, because Ms. Duke argued this claim at length during the March 4, 2009, hearing, the court will now address the claim on its merits.

/// /// ///

/// /// ///

1               *b.*      *Ms. Duke has not adequately argued that Ms. Malloy's statements are*

2                      *defamatory*

3        This brings the court to the second major problem besetting Ms. Duke's alleged defamation

4 claim: namely, Ms. Duke has not adequately demonstrated that Ms. Malloy's statements were false

5 and defamatory.  Rather, Ms. Duke makes unsubstantiated accusations that Ms. Malloy defamed

6 Ms. Duke by accusing Ms. Duke of embezzlement, failing to augment the City's budget, and

7 unlawfully borrowing City funds. (*See* Doc. #69 at 29:3-11.)  Critically, however, Ms. Duke does not

8 attempt to demonstrate that these statements were, in fact, defamatory in nature.  Instead, she states

9 that the false and defamatory nature of Ms. Malloy's statements "will be demonstrated" (Doc. #69

10 at 10:9) and "will be shown." (*Id*. at 11:3.)  Such assertions cannot survive summary judgment.  As

11 the non-movant, Ms. Duke must respond with evidence setting "out specific facts showing a genuine

12 issue for trial." Fed. R. Civ. P. 56(e).

13               *c.*      *Ms. Malloy's alleged statements were not, in fact, defamatory*

14        In any event, the court notes that Ms. Malloy's statements were not, in fact, defamatory in

15 nature.  Under Nevada law, "[a] statement is defamatory when it would tend to lower the subject in

16 the estimation of the community, excite derogatory opinions about the subject, and hold the subject

17 up to contempt." *K-Mart Corp. v. Washington*, 866 P.2d 274, 281-82 (1993) (citing *Las Vegas Sun v.*

18 *Franklin*, 329 P.2d 867, 869 (1958).  However, a statement is only defamatory if it publishes a

19 statement of fact. *See Posadas v. City of Reno*, 851 P.2d 438, 442 (1993).  Statements of opinion are

20 not defamatory and are not actionable. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974).

21 When examining whether a statement is defamatory "[t]he words must be reviewed in their entirety

22 and in context to determine whether they are susceptible of a defamatory meaning." *Chowdhry*, 851

23 P.2d at 463.

24        The only evidence that Ms. Duke proffers regarding Ms. Malloy's alleged statements is a

25 March 31, 2009, letter (Doc. #67 at Ex. 15) from Mr. Gransbery to Mr. Evangelatos, which

26 memorialized the meeting, and a May 1, 2009, letter (Doc. #70 at Ex. 3) from Susan Fairfield to

27 Mr. Gransbury, which mentioned the meeting. (*See also* Doc. #69 at 29:9-11 stating that Ms. Duke

28 relies on these letters as evidence of defamation.)

1    However, neither letter records or reiterates Ms. Malloy's statements. (*See* Doc. #67 at Ex. 15.)

2    Whereas the first letter reports the subject matters addressed during the meeting (*see id.*), the second

3    letter is further removed from the March 4, 2009, meeting and merely responds to financial concerns

4    raised by Ms. Malloy during her meeting with Mr. Gransbery. (*See* Doc. #70 at Ex. 3.)  As a result,

5    the court cannot review Ms. Malloy's statements "in their entirety," as required by *Chowdry*, because

6    there is no record of the statements.  Accordingly, the court's conclusion whether Ms. Malloy's alleged

7    statements were defamatory must rest on the context in which the alleged statements were made.

8         Evidence illuminating the context of Ms. Malloy's alleged statements is provided by the

9    March 31, 2009, letter from Mr. Gransbery to Mr. Evangelatos.  (Doc. #67 at Ex. 15.)  In pertinent

10   part, Mr. Gransbery's March 31, 2009, letter states:

11        On March 4th, Councilwoman Kelly Malloy, dropped by my office to discuss some

12        issues concerning the financial stability of the City of Fernley. Along with this concern

13        Ms. Malloy believed there was considerable mishandling of funds and inaccurate

14        reporting by the Finance Director, Bonnie Duke.  Ms. Malloy was concerned that the

15        City of Fernley met up to seven conditions, listed under N.R.S. § 354.685, which could

16        potentially cause the City to come under severe financial emergency.  (*Id.*)

17   As preliminary evidence that Ms. Malloy's statements were not defamatory, the court notes that the

18   purpose of the meeting was, as the letter states, "to discuss some issues concerning the financial

19   stability of the City of Fernley."  (*Id.*)  That the meeting's purpose–and therefore the *context* of

20   Ms. Malloy's alleged statements–was to protect the City's financial stability, and not discuss

21   Ms. Duke, has been admitted by Ms. Duke. (*See* Doc. #69 at 27.)

22        In addition to the meeting's purpose, further evidence of the non-defamatory nature of

23   Ms. Malloy's statements can be gleaned from Mr. Gransbery's word choice.   When memorializing

24   his meeting with Ms. Malloy in the March 31, 2009, letter, Mr. Gransbery stated that Ms. Malloy

25   "believed" funds had been mishandled and that "she was concerned" that the City could not meet its

26   obligations.  (Doc. #67 at Ex. 15.)   Significantly, neither "beliefs" nor "concerns" are facts.

27   *See, e.g., Oxford English Dictionary* (3d ed. 2011) ("belief, *n.*: Acceptance that a statement, supposed

28   fact, etc., is true; a religious, philosophical, or personal conviction; an opinion, a persuasion"); *id.*

17

("concern, *n*.: A matter or subject that affects or touches one, and that ought to engage one's active interest and attention").  As established by *Posadas*, such beliefs and concerns are not actionable because they are not statements of fact. *Posadas*, 851 P.2d at 442.

Therefore, the court concludes that Ms. Malloy's alleged statements were not defamatory in nature because they were expressions of opinion. *Gertz*, 418 U.S. at 339-40.

### d.    Ms. Duke has not established actual malice

The third problem facing Ms. Duke's alleged defamation claim relating to the March 4, 2009, meeting between Mr. Gransbery and Ms. Malloy is that Ms. Duke has failed to provide any evidence that Ms. Malloy's statements were made with actual malice. Again, Ms. Duke relies on *Chowdry* and mistakenly asserts that the malice component is abrogated if the allegedly defamatory statement "tends to injure [a public official] in her business or profession."  (Doc. #69 at 28:14-24.)  As discussed above, *see supra* p. 14, this is not true.

### e.    Ms. Malloy's alleged statements are privileged

Finally, the court notes that Ms. Duke's alleged statements to Mr. Gransbery during the March 4, 2009, meeting are privileged.  Under Nevada law, "[a] qualified or conditional privilege exists where a defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if it is made to a person with a corresponding interest or duty." *Circus Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101, 105 (1983) (citing *Scarpelli v. Jones*, 626 P.2d 785 (1981)).  "Whether a particular communication is conditionally privileged by being published on a 'privileged occasion' is a question of law for the court." *Id.*

Here, Ms. Duke alleges that Ms. Malloy, a Councilwoman and fiduciary of the City, defamed Ms. Duke during a meeting with Mr. Gransbery, who is the supervisor of local government finance for the Nevada Department of Taxation. (*See* Doc. #67 at Ex. 15.)  Although not briefed by the parties, the court notes that Ms. Malloy and Mr. Gransbery's duties and responsibilities correspond insofar as both Ms. Malloy and Mr. Gransbery have a deep interest in ensuring that the City is financially stable.  It is highly likely, therefore, that Ms. Malloy's alleged statements during her March 4, 2009, meeting with Mr. Gransbery are privileged.

18

1     In conclusion, Ms. Duke's defamation claim relating to Ms. Malloy's March 4, 2009, meeting

2  with Mr. Gransbery fails as a matter of law because the claim was not pled in her complaint, Ms. Duke

3  did not adequately argue that Ms. Malloy's statements were defamatory, Ms. Malloy's statements were

4  not, in fact, defamatory, Ms. Duke has not established actual malice, and Ms. Malloy's alleged

5  statements were privileged. Therefore, Ms. Duke's second defamation claim fails as a matter of law.

6  **E.    Counts Five & Six: The City's Alleged Violations of City Ordinances are not Legally**

7  **Cognizable**

8     Finally, the court addresses Ms. Duke's fifth and sixth claims for relief, which allege that the

9  City terminated Ms. Duke in violation of two city ordinances. (Doc. #49 at 9-10.) In response, the

10  City argues, first, that it did not violate either City ordinance and, second, that the ordinances in

11  question do not provide any private cause of action. (*See* Doc. #67 at 34-36.) The court agrees.

12     The City's power to remove public officials is governed by a series of state statutes and city

13  ordinances. Under state law, city officials may be removed by a majority vote of the City Council.

14  *See* Nev. Rev. Stat. § 266.415 (West 2001); Nev. Rev. Stat. § 266.200 (West 2001). The Mayor is

15  only entitled to vote in cases of a tie or if the Mayor decides to veto the City Council's decision.

16  *See* Nev. Rev. Stat.§ 266.415; Nev. Rev. Stat. § 266.200. The city ordinances governing the removal

17  of city officials are substantially similar.    City Ordinance 2001-0005 creates the office of City

18  Treasurer and provides that the Treasurer "shall hold the office during the pleasure of the Mayor and

19  Council." 2001-0005(2)(2). Additionally, City Ordinance 2001-0001, which creates the office of the

20  City Manager, provides that the City Manger is "authori[zed]" to "remove all non-elected officers and

21  employees of the City except as otherwise provided by law." 2001-0001(4)(A).

22     Ms. Duke contends that her termination was unlawful because the City Council, and not the

23  Mayor, City Manager or both, voted for her termination. (Doc. #66 at 7-8.) This argument is

24  meritless. First, the City did not violate any statute or ordinance. On March 4, 2009, the City Council

25  voted to terminate Ms. Duke by a 3-2 vote. (*Id.*, Ex 8 at 14.) Pursuant to N.R.S. § 266.200, Mayor

26  Cutler refrained from voting because there was no tie and, presumably, no reason to veto. Similarly,

27  the City Manger refrained from voting because he is not entitled to vote at City Council meetings and

28  because his removal power is expressly limited. That is, although 2001-0001(4)(A) empowers the City

19

Manager to remove nonelected officials it also provides that officials may be removed as otherwise provided by law. 2001-0005(2)(2) explicitly provides otherwise and outlines the very means the City used to terminate Ms. Duke.

Second, Ms. Duke's contention that an ordinance was violated because neither the City Manager nor Mayor voted ignores the obvious fact that their removal power is not exclusive. There is, therefore, no reason to believe either city ordinance was violated.

Ms. Duke attempts to evade this obvious and inevitable conclusion by emphasizing, *inter alia*, that Ms. Duke held two positions and that the City's reasons for her termination were pretextual. (Doc. #69 at 30-32.) In either case, however, neither a state statute nor a city ordinance was violated. Ms. Duke, *qua* Finance Director, Treasurer or both, was properly removed. And, even if the City's motives were pretextual, the City properly executed its pretext by removing Ms. Duke in accordance with the relevant state statutes and city ordinances. Nonetheless, Ms. Duke's assertion is inapposite because the City defined the position of City Treasurer and Finance director as a single position. *See supra* p. 2.

Finally, assuming, *arguendo*, that the City violated either ordinance, Ms. Duke has failed to demonstrate the existence of a private right of action. The ordinances contain neither express language creating a cause of action nor an implied right of action. *See* 2001-0001; 2001-0005. Moreover, Ms. Duke fails to cite to any authority suggesting that the court should infer such a right. (*See* Doc. #69 at 30-32.) Rather, she attempts to recast her claim as a due process issue, which, for the reasons discussed above, *see supra* pp. 7-8, fails.

Therefore, Ms. Duke's fifth and sixth causes of action fail as a matter of law because they are not legally cognizable.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

### IV.  CONCLUSION

For the reasons stated above, Ms. Duke has failed to establish a genuine issue as to any material fact. IT IS THEREFORE ORDERED that Ms. Duke's motion for summary judgment (Doc. #66) is **DENIED** and the City's motion for summary judgment (Doc. #67) is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 21, 2012

ROBERT A. MCQUAID, JR.
UNITED STATES MAGISTRATE JUDGE

21